<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| C.S., | Civil Action No. 19-20845 (SRC) |
| Plaintiff, | |
| v. | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**<u>CHESLER, District Judge</u>**

This matter comes before the Court on the appeal by Plaintiff C.S. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act ("the Act"). The Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. Civ. R. 9.1(b), will affirm the Commissioner's decision.

**I.     BACKGROUND**

Plaintiff applied for disability insurance benefits alleging disability beginning April 1, 2015. A hearing was held before Administrative Law Judge Donna A. Krappa ("the ALJ") on May 23, 2018. The ALJ issued an unfavorable decision on November 1, 2018. Plaintiff then sought review of the decision from the Appeals Council which denied Plaintiff's request. After Plaintiff's request was denied, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

1

A claimant for social security benefits must demonstrate an "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "The Commissioner evaluates each case according to a five-step process until a finding of 'disabled' or 'not disabled' is made." Schaudeck v. Comm'r Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999). The process is as follows: (1) the claimant is found not disabled if she engages in substantial gainful employment, (2) the claimant is found not disabled if she does not suffer from a severe impairment, (3) if a claimant suffers from a severe impairment that meets or equals one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") then she is found disabled, (4) if the claimant's severe impairment does not meet or equal any of the Listings, the Commissioner determines the claimant's residual functional capacity ("RFC") to decide whether she can perform any work she has done in the past—if she can perform past relevant work, the claimant is found not disabled, and (5) if the claimant cannot perform any past work, the Commissioner determines whether there is any work existing in the national economy that the claimant can perform—if there is, the claimant is found not disabled. Id.

Here, the ALJ's decision followed the required five-step sequential analysis to determine whether Plaintiff was disabled. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since April 1, 2015, the alleged onset date. (Tr. 12). At step two, the ALJ concluded that Plaintiff had a number of "severe" impairments, including: asthma, ulcerative colitis, sleep apnea, fibromyalgia, spondylosis in the cervical spine, obesity, post-traumatic stress disorder, and obsessive compulsive disorder. (Tr. 13). At step three, the ALJ

2

found that none of these impairments, either individually or in combination, met the criteria of any listed impairment or amounted to the medical equivalent of any listed impairment. (Tr. 13–15). At step four, the ALJ found that Plaintiff retained the RFC to perform light work with certain exertional and nonexertional limitations, including that she was able to perform jobs that were simple and repetitive. (Tr. 15–24). Moreover, the ALJ determined that, given the RFC finding, Plaintiff was unable to perform any past relevant work. (Tr. 24). At step five, the ALJ determined, based on the testimony of a vocational expert, that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and RFC. (Tr. 24–25). As a result, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. (Tr. 25). Plaintiff appeals this determination.

## II. STANDARD OF REVIEW

On appeal, the Court conducts a plenary review of the legal issues but must accept the ALJ's factual findings as long as there is substantial evidence to support them. Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (internal quotation omitted). The substantial evidence standard is a deferential standard of review. Id.

The burden of proof is on the plaintiff at all steps except step five, where the burden is on the Commissioner. Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 634 (3d Cir. 2010). Additionally, the plaintiff, as the party attacking the agency determination, must prove prejudice under the harmless error doctrine. Shinseki v. Sanders, 556 U.S. 396, 409 (2009). Under this

doctrine, a remand is not required unless the error affected the ultimate outcome of the case. See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

**III.   DISCUSSION**

Plaintiff argues that the ALJ's analysis at both steps three and four was inadequate for a number of reasons. The Court addresses each step in turn.

**A. Step Three**

Plaintiff alleges several deficiencies with the ALJ's step three analysis. First, she argues that the ALJ failed to adequately consider her obesity. (Pl. Br. at 11–20). Plaintiff also argues that the ALJ did not assess her impairments in combination and failed to sufficiently explain her reasoning. (Pl. Br. at 21–23). Finally, she argues that she meets the requirements of Listing 5.06B and, therefore, the ALJ erred in finding to the contrary. (Pl. Br. at 24–27). All of these arguments are without merit.

Plaintiff first argues that the ALJ failed to adequately consider Plaintiff's obesity both on its own and in conjunction with her other impairments. Plaintiff cites the Third Circuit's decision in Diaz v. Comm'r Soc. Sec., 577 F.3d 500 (3d Cir. 2009), to support her argument. (Pl. Br. at 15). There, the Third Circuit remanded the case because the ALJ identified obesity as a severe impairment in step two, but failed to analyze its impact elsewhere in the opinion. Id. at 503–05. The court pointed to Social Security Ruling ("SSR") 00-3p, which instructed ALJs to meaningfully consider obesity individually and in combination with other impairments.[1] Id. at 503. In light of this instruction, and the ALJ's failure to analyze the effects of claimant's obesity

---

[1] SSR 00-3p was superseded by SSR 02-1p in 2002 but SSR 02-1p did not materially amend SSR 00-3p. Rutherford v. Barnhart, 399 F.3d 546, 552 n.4 (3d Cir. 2005).

4

at all, the Third Circuit concluded it was "at a loss in [its] reviewing function." Id. at 504. Similarly, here, Plaintiff argues that the ALJ's decision was inadequate because the ALJ identified obesity as a severe impairment in step two but failed to mention it in the discussion at step three. (Pl. Br. at 11–18).

Plaintiff's argument is unavailing. As the Commissioner notes, in Diaz, the Third Circuit explained the ALJ would not have erred if he had included "any discussion of the combined effect of [the plaintiff's obesity]." 577 F.3d at 504. Here, while the ALJ did not reference obesity at step three, she analyzed the functional limitations caused by Plaintiff's obesity during the RFC determination at step four. (Tr. 21). Thus, unlike in Diaz, the ALJ's decision provides for judicial review because it includes an "analysis of the cumulative impact of [Plaintiff's] obesity and other impairments on her functional capabilities." Id. at 504; see also Farmer v. Comm'r Soc. Sec., No. 19-cv-13437, 2020 WL 6620152, at *2 (D.N.J. Nov. 12, 2020) (distinguishing Diaz because the ALJ's opinion mentioned the cumulative effect obesity had on the plaintiff's severe impairments). Plaintiff argues this analysis needed to appear at step three. But the ALJ was not required to "use particular language or adhere to a particular format in conducting [her] analysis." Jones, 364 F.3d at 505.

Furthermore, the ALJ's failure to mention obesity at step three is harmless under Shinseki. Indeed, Plaintiff merely speculates that obesity could have affected her ability to work—she does not point to any evidence that her obesity, on its own or in combination, meets one of the Listings or causes any functional limitations on her ability to work beyond those recognized by the ALJ. Rodriguez v. Comm'r Soc. Sec., No. 14-cv-02432, 2015 WL 5771619, at *6 (D.N.J. Sep. 30, 2015) (declining to remand where the plaintiff failed to identify any records

5

related to obesity the ALJ omitted from consideration). Without any medical evidence that obesity exacerbated her impairments, Plaintiff's argument is devoid of any showing that a more complete consideration of obesity at step three would have changed the ALJ's decision. Roman v. Comm'r of Soc. Sec., No. 19-cv-05756, 2020 WL 6268673, at *6 (D.N.J. Oct. 26, 2020) (holding that the failure to address obesity at step three is harmless where the ALJ addresses it at step four). This is insufficient to carry Plaintiff's burden under the harmless error doctrine.

Next, Plaintiff argues that the ALJ failed to consider her other impairments, besides obesity, in combination at step three. (Pl. Br. at 23–25). An ALJ fulfills her duty to consider impairments in combination if she explicitly says she did so and there is "no reason not to believe h[er]." Morrison ex rel. Morrison v. Comm'r Soc. Sec., 268 F. App'x 186, 189 (3d Cir. 2008). Here, the ALJ stated that she considered Plaintiff's impairments in combination. (Tr. 13). And Plaintiff does not identify how further analysis of her impairments in combination would have changed the disability analysis. Holloman v. Comm'r Soc. Sec., 639 F. App'x 810, 814 (3d Cir. 2016) (explaining that the plaintiff must explain how the error she identifies in the ALJ's analysis could have made a difference in the ultimate outcome). As such, Plaintiff's argument fails.

To the extent Plaintiff argues that the ALJ did not sufficiently explain her reasoning as to why Plaintiff's impairments did not meet any of the Listings, her argument is unavailing. Plaintiff cites both Burnett v. Comm'r Soc. Sec., 220 F.3d 112 (3d Cir. 2000), and Torres v. Comm'r Soc. Sec., 279 F. App'x 149 (3d Cir. 2008). (Pl. Br. at 22–23). Together these cases stand for the proposition that the ALJ must explain why she believes a claimant's impairments do not meet any of the Listings rather than offer merely conclusory statements. Burnett, 220 F.3d

at 119–20; Torres, 279 F. App'x at 152. However, as stated above, an ALJ need not "use particular language or adhere to a particular format in conducting [her] analysis." Jones, 364 F.3d at 505. Instead, the decision "read as a whole" need only indicate that the ALJ considered the appropriate factors. Id.

When read as a whole, the ALJ's decision indicates she sufficiently considered the evidence and explained her findings and, therefore, the decision is amenable to judicial review. The ALJ spent one and a half pages analyzing Plaintiff's impairments at step three, during which she discussed three specific Listings and provided citations to the record. (Tr. 13–15). Moreover, the ALJ's analysis at step three was supplemented by her discussion at step four, which spanned eight pages and methodically documented Plaintiff's medical history in determining Plaintiff's RFC. (Tr. 15–24); see Folk v. Berryhill, No. 18-cv-02222, 2019 WL 1895066, at *5 (D.N.J. Apr. 29, 2019) (concluding that an ALJ's analysis at step three was sufficient where it incorporated a detailed discussion of the evidence at step four).

Finally, Plaintiff argues that she meets Listing 5.06B and the ALJ's conclusion otherwise was error. (Pl. Br. at 24–27). Listing 5.06B addresses inflammatory bowel disease. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.06. Specifically, a claimant meets the severity requirements of 5.06B when she experiences two of the following during a six-month period, despite continued treatment:

1. Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or
2. Serum albumin of 3.0 g/dL or less, present on at least evaluations at least 60 days apart; or
3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
4. Perineal disease with a draining abscess or fistula, with pain that is not

>   completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
> 5. Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart; or
> 6. Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

20 C.F.R. Pt. 404, Subpt. P, App 1, § 5.06B. The ALJ explicitly referenced Listing 5.06B and determined that it was inapplicable to Plaintiff. (Tr. 14).

The ALJ's conclusion that Plaintiff did not meet the Listing 5.06B is supported by substantial evidence. For one, Plaintiff concedes that she cannot squarely meet the requirements of Listing 5.06B. (Pl. Br. at 27). Nevertheless, she argues her impairments in conjunction amount to the equivalent of the Listing. (Pl. Br. at 25–27). As support, she points to a doctor's appointment in December 2015 in which an abdominal mass was palpable and a blood test in April 2016 allegedly indicating Plaintiff was anemic. As to the blood test, Plaintiff acknowledges her hemoglobin levels were too high to constitute anemia for the purposes of Listing 5.06B, but, Plaintiff alleges, her other blood chemistries indicated macrocytic anemia. (Pl. Br. at 25–27). According to Plaintiff, this evidence "strongly suggests" she is the medical equivalent of Listing 5.06B. (Pl. Br. at 27).

However, Plaintiff does not offer anything beyond mere speculation to support her argument that she has a combination of impairments that are the medical equivalent of Listing 5.06B. In order to meet a Listing based on equivalence, the Plaintiff "must present findings equal in severity to <u>all</u> the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 531 (1990) (emphasis in original) (citing 20 C.F.R. § 416.926(a) (1989)). To bolster her argument that her bloodwork is indicative of anemia and, therefore, equivalent of Listing 5.06B,

Plaintiff provides one citation to blood test results in the record and then states "this is highly suggestive that plaintiff suffers macrocytic anemia as a result of her gastrointestinal conditions." (Pl. Br. at 26–27). But Plaintiff does no more than "suggest" that she meets the listing: she does not provide any medical findings diagnosing anemia based on the blood test results and she does not provide any medical source evidence that her condition is medically equivalent to the Listing. See Myers ex rel F.W. v. Saul, No. 17-cv-13530, 2020 WL 6042318, at *8 (D.N.J. Oct. 13, 2020) (explaining that citations to various aspects of the record showing claimant's medical condition were insufficient where there was no explanation as to how the cited evidence satisfied any Listing). Indeed, without any such medical evidence, the Court cannot base a finding of medical equivalence on pure speculation from Plaintiff. Cruz v. Comm'r of Soc. Sec., No. 18-cv-01071, 2019 WL 1650098, at *2 & n.2 (D.N.J. Apr. 17, 2019) (explaining that an ALJ may not make a medical equivalence decision sua sponte but rather must identify evidence in order to conclude that a plaintiff's impairments are equivalent to a Listing). Thus, Plaintiff's argument that she approximates Listing 5.06B fails.

In sum, the ALJ's decision at step three adequately addressed Plaintiff's impairments in isolation and in combination and the conclusion that Plaintiff did not meet any of the Listings was supported by substantial evidence. Moreover, Plaintiff has failed to identify any record evidence showing that a more thorough consideration of obesity would have changed the ALJ's analysis. As such, the ALJ's analysis at step three was sufficient.

**B. Step Four**

Plaintiff argues the ALJ's RFC determination at step four is not supported by substantial evidence for three reasons. First, she alleges the ALJ's physical RFC determination is

9

unsupported and unexplained. (Pl. Br. at 18–21, 32–33). Next, she argues the ALJ incorrectly ignored her subjective complaints of pain. (Pl. Br. at 33–38). Finally, she argues the ALJ's RFC determination that Plaintiff could perform simple and repetitive tasks is inconsistent with the mental impairments the ALJ found at steps two and three. (Pl. Br. at 38–39). All three arguments fail.

First, Plaintiff argues that both the ALJ's exertional and postural assessment of Plaintiff's RFC are not supported by substantial evidence. As to the exertional RFC, the ALJ determined that Plaintiff is capable of light work and able to "lift/carry 20 lbs. occasionally and 10 lbs. frequently," "stand/walk for 6 hours in an eight hour work day," "sit for 6 hours in an eight hour work day," "and perform unlimited pushing and pulling within the weight restriction given." (Tr. 15). As to the postural RFC, the ALJ concluded Plaintiff was able to perform jobs "that require frequent (as opposed to unlimited) use of ladders, ropes, or scaffolds," "that [require] frequent use of ramps or stairs," and "that require unlimited balancing, but frequent stooping, kneeling, crouching and/or crawling." (Tr. 16). Plaintiff argues that both determinations are unsupported by the record. (Pl. Br. at 18–21, 32–33).

Except for the conclusion that Plaintiff could perform jobs that require frequent use of ladders, ropes, or scaffolds, the ALJ's postural and exertional RFC determinations are supported by substantial evidence. The ALJ's exertional RFC findings that Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently, perform unlimited pushing and pulling within these weight restrictions, and stand, walk, and sit for six hours a day are consistent with the opinions offered by both of the agency medical consultants. (Tr. 79, 91, 105–06, 120–21). Moreover, the determination that Plaintiff could perform jobs that require frequent use of ramps

10

or stairs, frequent stopping, kneeling, crouching and crawling, and unlimited balancing is consistent with the opinion of one of the agency medical consultants. (Tr. 106, 121). Even though the other agency medical consultant found Plaintiff could only perform these tasks "occasionally," (Tr. 80, 92), this Court is forbidden from reweighing the evidence. See Figueroa v. Comm'r Soc. Sec., No. 14-cv-06193, 2016 WL 3018694, at *2 (D.N.J. May 25, 2016). Thus, the agency medical opinion that is consistent with the ALJ's findings constitutes substantial evidence to support the ALJ's conclusions. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (describing substantial evidence as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate" (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995))).

However, the determination that Plaintiff could perform jobs that involve the frequent use of ladders, ropes, or scaffolds is unsupported by the record. Indeed, neither of the agency medical consultants determined that Plaintiff could frequently use ladders, ropes, or scaffolds, (Tr. 80, 92, 106, 121), and, as Plaintiff points out, the ALJ does not cite any medical evidence in the record to support her contrary conclusion, (Pl. Br. at 19–20). Nor is it apparent that the record could support the ALJ's conclusion—the combination of Plaintiff's impairments, would, as a matter of common sense, make it difficult for her to perform jobs that require her to frequently climb ladders, ropes, or scaffolds. As such, the Court finds that this conclusion is not supported by substantial evidence.

Nevertheless, Plaintiff has failed to carry her burden of showing that the error was harmful. Under Shinseki, Plaintiff must show that a different determination as to her ability to use ladders, ropes, or scaffolds would have changed the ALJ's conclusion that she was not

11

disabled. See Rutherford, 399 F.3d at 553 ("[R]emand is not required here because it would not affect the outcome of the case."). Plaintiff has failed to persuade the Court that this error affected the outcome of the disability determination. In fact, the hypothetical posed by the ALJ to the vocational expert at the hearing included the limitation that Plaintiff could only occasionally climb ladders, ropes, or scaffolds. (Tr. 64–65). Thus, the occupations identified by the vocational expert reflect a more limited postural RFC than the ALJ's ultimate decision. And, as the Commissioner points out, none of the three jobs identified by the vocational expert at step five as suitable for someone with Plaintiff's impairments involve any climbing whatsoever.[2] This means that, even if the ALJ found Plaintiff could not climb ladders, ropes, or scaffolds at all, the ALJ still would have concluded there was work in the national economy she could perform. As a result, the error was harmless.

Second, Plaintiff argues the ALJ ignored her subjective complaints of pain. ALJs are required to carefully consider a claimant's subjective complaints of pain but need not credit them. Chandler v. Comm'r Soc. Sec., 667 F.3d 356, 363 (3d Cir. 2011). When an ALJ rejects a subjective complaint, she must "specify [her] reasons for rejecting [the complaint] and support [her] conclusion with evidence in the record." Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990).

The ALJ here adequately supported her decision to reject Plaintiff's subjective complaints with medical evidence in the record. The ALJ found that Plaintiff's medical

---

[2] The three jobs identified by the vocational expert were labeler, mail clerk, and garment folder. Per the Dictionary of Occupational Titles, a labeler "marks or affixes trademarks or other identifying information. . . using one or more methods such as metal punch and hammer, crayon, rubber stamp and ink, [etc.]," a mail clerk "sorts incoming mail for distribution and dispatches outgoing mail," and a garment folder "folds garments for bagging or boxing." U.S. Dep't of Labor Emp. & Training Admin., Dictionary of Occupational Titles (4th ed. 1991). None of these job descriptions contain any indication that the occupation involves climbing ladders, ropes, or scaffolds.

12

impairments could cause the alleged symptoms but that Plaintiff's statements about the "intensity, persistence, and limiting effects" of her symptoms were not entirely consistent with the objective medical evidence. (Tr. 17). The ALJ then explained this decision citing several pieces of medical evidence that contradicted Plaintiff's statements. (Tr. 17–20). This evidence consisted mostly of medical reports in which doctors described Plaintiff as "experiencing no symptoms regarding her ulcerative colitis," (Tr. 19), "feeling well," (Tr. 19), and describing her condition as "mostly within normal limits," (Tr. 19), among other similar observations. The findings cited by the ALJ are sufficient to conclude there was substantial evidence to discount Plaintiff's subjective complaints.

Finally, Plaintiff argues the ALJ's mental RFC failed to account for the impairments the ALJ recognized at steps two and three. Specifically, Plaintiff points out that the ALJ identified "moderate limitations" in understanding, remembering, or applying information, interacting with others, ability to concentrate, persist, or maintain pace, and ability to adapt or manage herself at step three. (Tr. 14–15). Then, at step four, the ALJ found that Plaintiff could perform jobs that were simple and repetitive. (Tr. 20). In Hess v. Comm'r of Soc. Sec., 931 F.3d 198 (3d Cir. 2019), the Third Circuit addressed whether a finding at step four that a claimant could perform simple tasks was appropriate after a step three finding that the claimant had moderate limitations in concentration, pace and persistence. Id. at 210. The Third Circuit held that the ALJ must offer a valid explanation before assigning a "simple tasks" limitation[3] after a finding of moderate

---

[3] The Court reads the ALJ's RFC determination here that Plaintiff could perform "simple and repetitive" work, (Tr. 23), as equivalent to a "simple tasks" limitation. In Hess, the ALJ found the plaintiff could perform "jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions." 931 F.3d at 210 (internal quotation and alteration omitted). The Third Circuit explained that this formulation was essentially a "simple tasks" limitation because it effectively limited the plaintiff to unskilled work and, therefore, the case law related to "simple tasks" provided appropriate comparisons. Id. at 211. Here, the ALJ's

13

difficulties at step three. Id. at 211.

Here, the ALJ adequately explained her decision to assign an RFC for simple and repetitive work despite her finding at step three that Plaintiff had moderate limitations. The ALJ recognized limitations due to Plaintiff's depressive disorder, obsessive-compulsive disorder, and post-traumatic stress disorder. (Tr. 20). In light of these limitations, the ALJ supported her conclusion that Plaintiff could perform simple and repetitive work by citing record evidence indicating that Plaintiff generally experienced a reduction in symptoms related to these disorders during the relevant time period. (Tr. 20–21). Moreover, the ALJ explained that her RFC determination was informed by evidence that Plaintiff was able to handle most of the activities of daily life, including dressing herself, preparing simple meals, doing laundry, and grocery shopping. (Tr. 21). Finally, the ALJ cited evidence that Plaintiff was working 35-40 hours a week as an assistant manager at a retail store at the time the hearing took place. (Tr. 22).

The evidence relied upon by the ALJ here is similar to the evidence relied upon by the ALJ in Hess. There, the ALJ imposed a simple tasks limitation based on evidence that the plaintiff could perform the tasks of daily living, mental status reports that revealed the plaintiff could function effectively, and the fact that the plaintiff was working part-time as a dishwasher. Hess, 931 F.3d at 214. The Third Circuit found the ALJ's explanation for the simple tasks limitation valid. Id. at 215. Similarly, here, the Court finds the ALJ's explanation valid.

Comparison to other cases interpreting Hess further shows the ALJ's mental RFC determination here was appropriate. For example, recently, in A.D. v. Comm'r of Soc. Sec., 20-

---

"simple and repetitive" language similarly limits Plaintiff to unskilled work and the comparison to a "simple tasks" limitation is appropriate.

14

cv-05977, 2021 WL 4438174 (D.N.J. Sep. 28, 2021), this Court vacated the ALJ's decision and remanded the case because the ALJ failed to explain how a finding of moderate limitations in concentration, persistence, and pace at step three translated to an RFC finding that the plaintiff could perform simple and routine tasks. Id. at *1. The Court found that the ALJ's RFC determination was not supported by a valid explanation because it was contrary to medical opinion evidence on the record showing that plaintiff had severe impairments. Id. at *4. On the other hand, here, the ALJ considered the medical opinion evidence offered by two agency psychologists. (Tr. 23). Those psychologists both concluded that Plaintiff's mental impairments were mild. (Tr. 76–82, 102–09). Nevertheless, the ALJ found Plaintiff's impairments to be more limiting than suggested by the two experts and ultimately concluded, in light of all the evidence, Plaintiff could perform simple and repetitive work. (Tr. 23). Thus, unlike the ALJ in A.D., the ALJ here adequately considered the opinions of the medical experts in the record and provided a valid explanation for her decision.

In all, the failure to include further physical limitations in Plaintiff's physical RFC was harmless, the ALJ's decision to discount Plaintiff's subjective complaints of pain is supported by substantial evidence, and the ALJ provided a valid explanation for her conclusion Plaintiff could perform simple and repetitive work despite a finding of moderate limitations at step three. As such, Plaintiff's arguments at step four fail.

## IV. CONCLUSION

For these reasons, the Court affirms the Commissioner's decision.

                                                                          s/ Stanley R. Chesler
                                                     STANLEY R. CHESLER, U.S.D.J.

Dated: November 9, 2021

16